[Cite as *State v. Tate*, 2014-Ohio-2394.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 100348**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## ANTOINE TATE

DEFENDANT-APPELLANT

## JUDGMENT:
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-12-569766

**BEFORE:** Rocco, P.J., Blackmon, J., and McCormack, J.

**RELEASED AND JOURNALIZED:** June 5, 2014

-i-

**ATTORNEY FOR APPELLANT**

Britta M. Barthol
P.O. Box 218
Northfield, OH   44067

**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

BY:    Carl Sullivan
         Andrew T. Gatti
Assistant Prosecuting Attorneys
The Justice Center
1200 Ontario Street
Cleveland, OH   44113

KENNETH A. ROCCO, P.J.:

**{¶1}** Defendant-appellant Antoine Tate appeals from his convictions and the sentences imposed after the trial court found him guilty of aggravated robbery, kidnapping, and drug possession, all with firearm specifications, and theft, possession of criminal tools, and tampering with evidence.

**{¶2}** Tate presents two assignments of error. He claims his convictions for aggravated robbery and kidnapping, with firearm specifications, are unsupported by the manifest weight of the evidence. He further claims that the eight-year total sentence that the trial court imposed was improper because it was not the minimum term for his convictions.

**{¶3}** Upon a review of the record, this court disagrees with Tate's claims. Consequently, his convictions and sentences are affirmed.

**{¶4}** Tate's convictions result from an incident that occurred shortly after 10:00 p.m. on December 10, 2012. The state's witnesses provided the following account of the incident.

**{¶5}** The victim, Demetrius Patterson, drove with his girlfriend, Charise Littlejohn, and another friend to his cousin's apartment located at 4908 Quincy Avenue. Patterson wanted his cousin to repair Littlejohn's computer.

**{¶6}** Upon their arrival, Patterson exited his car and approached his cousin's building as Littlejohn was gathering the items she intended to take inside. Before Littlejohn joined him, Patterson saw two men come around the corner of the building.

One of the men, whom Patterson later identified as Tate, put a gun to Patterson's head and demanded that Patterson "[g]ive [him] everything."

{¶7} As Littlejohn watched, Tate struck Patterson with the gun and knocked him down. Tate then handed the gun to his companion, later identified as Demetrius Smith, and began "beating" Patterson. Both assailants "were hitting him, kicking him, going through his pockets." The men removed Patterson's wallet and cell phone.

{¶8} Littlejohn called 911 as the incident took place. She told the dispatcher that Patterson was being robbed and beaten and provided her location and a description of the assailants. She was speaking with the dispatcher when Smith returned the gun to Tate and the men simply walked away.

{¶9} The incident occurred within a short distance of the headquarters of the Cleveland Metropolitan Housing Authority ("CMHA") police department. Thus, two police patrol cars arrived near the scene within a minute of the incident. While CMHA Officer Kyle Flagg spoke to Patterson and Littlejohn, officer Demetrius Jackson and his partner officer Larry Jones noticed "less than a hundred feet" from the scene, "two men walking northbound on [East] 55th." The two men wore clothing that matched the description provided of the assailants.

{¶10} Jackson, who was driving, stopped the patrol car in front of the men and exited; Tate "took off running." Jones ordered Jackson to pursue Tate while he detained Smith. Jones was in the process of escorting Smith to the patrol car when Patterson drove up to that location. Patterson jumped out of his vehicle and exclaimed, "That's

him. * * * I called you. * * * That's one of them." After identifying Smith, Patterson found his cell phone within a few feet of the place where Jones had detained Smith.

{¶11} In following Tate, Jackson saw him remove a gun from his waistband and toss it "on top of an overhang" belonging to one of the houses on the street. Jackson caught up to Tate, ordered him to stop and demanded to see his hands. Although Tate stopped, he did not obey the other command. Jackson "then tased him."

{¶12} By this point, Flagg arrived at Jackson's location to help him make the arrest. The officers found a bag of crack cocaine in Tate's jacket pocket. Tate also carried over $200 in cash.

{¶13} After Tate was placed next to Smith in the rear of Jones's CMHA patrol car, the two men whispered to each other briefly, then Smith stated, "All right. The gun's mine and the drugs is his." Jackson and Flagg located the weapon and took it into evidence.

{¶14} Tate and Smith subsequently were indicted together. Tate was charged with aggravated robbery, kidnapping, theft, drug possession, drug trafficking, possession of criminal tools, and tampering with evidence. Three of the counts contained firearm specifications.

{¶15} Both defendants executed jury waivers and tried their cases to the bench. At the conclusion of the state's case-in-chief, the trial court granted Tate's motion for acquittal only as to the drug trafficking count.

{¶16} Tate then testified in his own behalf. He claimed that he and Smith had been called to the address to sell drugs, encountered Patterson, and, after receiving the drugs, Patterson tried to pull out a gun. Tate stated that he and Smith tried to wrest the gun away from Patterson; after they succeeded, they ran away.

{¶17} The trial court found Tate guilty of the remaining charges. After the state elected the counts that were to be merged for sentencing purposes, the court imposed a sentence on Tate of three years for the firearm specification to be served prior to and consecutive with five years for the aggravated robbery conviction; the other sentences were ordered to be served concurrently.

{¶18} Tate now appeals and presents two assignments of error for this court's review.

I. The Appellant's convictions for aggravated robbery and kidnapping with firearm specifications were against the manifest weight of the evidence.

II. The trial court erred in sentencing the Appellant by imposing more than the minimum sentence.

{¶19} In his first assignment of error, Tate argues that the version of the incident that he provided during his testimony is the more believable one; therefore, his convictions for aggravated robbery and kidnapping with firearm specifications are not supported by the manifest weight of the evidence. A review of the record does not compel this court to agree.

**{¶20}** In *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25, the Ohio Supreme Court addressed the standard of review when a challenge to the manifest weight of the evidence is presented in a criminal case, stating:

> The criminal manifest-weight-of-the-evidence standard was explained in *State v. Thompkins* (1997), 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541. In *Thompkins*, the court distinguished between sufficiency of the evidence and manifest weight of the evidence, finding that these concepts differ both qualitatively and quantitatively. *Id.* at 386, 678 N.E.2d 541. The court held that sufficiency of the evidence is a test of adequacy as to whether the evidence is legally sufficient to support a verdict as a matter of law, but weight of the evidence addresses the evidence's effect of inducing belief. *Id.* at 386-387, 678 N.E.2d 541. In other words, a reviewing court asks whose evidence is more persuasive — the state's or the defendant's? We went on to hold that although there may be sufficient evidence to support a judgment, it could nevertheless be against the manifest weight of the evidence. *Id.* at 387, 678 N.E.2d 541. "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." *Id.* at 387, 678 N.E.2d 541, citing *Tibbs v. Florida* (1982), 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652.

**{¶21}** The weight to be given to the evidence and the credibility of the witnesses are matters primarily for the trier of fact to assess. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. Therefore, an appellate court may not merely substitute its view for that of the factfinder; instead, this court must determine whether, in resolving conflicts in the evidence, the factfinder "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v.Thompkins*, at 387. Accordingly, reversal on manifest

weight grounds is reserved for "the exceptional case that the evidence weighs heavily against the conviction." *Id.* This case does not present such an "exceptional" one.

**{¶22}** In this case, the state's witnesses provided a logical, compelling account of the incident. Patterson testified that he saw his assailants clearly, and he never wavered in his identification of Tate as the one who held the gun on him and struck him to the ground with it before searching his person and taking his wallet and cell phone. Littlejohn corroborated nearly every detail of Patterson's description of his ordeal.

**{¶23}** Moreover, each of the CMHA officers provided details that also corroborated Patterson's and Littlejohn's accounts. They spotted Tate mere minutes after the incident in the same area where it occurred. Tate wore clothing that matched the description of the suspects. When the police stopped to investigate his presence near the scene, Tate fled.

**{¶24}** Tate's version of the events, on the other hand, was obviously self-serving. If he and Smith were the victims of an attack by an opportunistic drug buyer as Tate claimed, there would have been little reason for Tate to run from the officers while Patterson stayed, and less reason to throw the gun away but not the drugs.

**{¶25}** On the basis of the evidence adduced at trial, this court cannot say that the trial court "clearly lost its way" when it found Tate guilty of aggravated robbery and kidnapping with firearm specifications. *State v. Johnson*, 8th Dist. Cuyahoga No. 99656, 2013-Ohio-5430; *State v. Tart*, 8th Dist. Cuyahoga No. 76223, 2000 Ohio App. LEXIS 2474 (June 9, 2000). Tate's first assignment of error, accordingly, is overruled.

**{¶26}** Tate argues in his second assignment of error that his ten-year total sentence for his convictions must be reversed because the trial court failed to provide a "specific analysis as to its consideration of any of the statutory [sentencing] factors." Tate's argument is rejected.

**{¶27}** This court acknowledges that not all districts in Ohio are applying R.C. 2953.08(G)(2) to the exclusion of *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124, which indicated that felony sentences are reviewed under an abuse of discretion standard. However, this court applies the statutory standard, which requires the appellate court to clearly and convincingly find that the sentence is contrary to law. *State v. Holmes*, 8th Dist. Cuyahoga No. 99783, 2014-Ohio-603, ¶ 7, citing *State v. Kopilchak*, 8th Dist. Cuyahoga No. 98984, 2013-Ohio-5016, ¶ 10.

**{¶28}** A trial court has full discretion to impose a prison sentence within the statutory range. *Holmes* at ¶ 8. Nevertheless, the court must still consider the purposes and principles of felony sentencing set forth in R.C. 2929.11, and the sentencing factors set forth in R.C. 2929.12. *Id.*, citing *State v. Hodges*, 8th Dist. Cuyahoga No. 99511, 2013-Ohio-5025, ¶ 7.

**{¶29}** R.C. 2929.11 provides that a sentence imposed for a felony shall be reasonably calculated to achieve the two overriding purposes of felony sentencing and shall be "commensurate with and not demeaning to the seriousness of the offender's conduct and its impact on the victim," while being "consistent with sentences imposed for similar crimes committed by similar offenders." In determining the most effective way

to comply with the purposes and principles of sentencing, the court must consider the seriousness, recidivism, and mitigating factors set forth in R.C. 2929.12, and may consider "any other" relevant factors.

{¶30} R.C. 2929.11 and 2929.12 are not "fact finding" statutes. Thus, this court may presume a trial court has considered these factors absent an affirmative demonstration by a defendant to the contrary. *Holmes*, 8th Dist. Cuyahoga No. 99783, 2014-Ohio-603, ¶ 8, citing *State v. Stevens*, 1st Dist. Hamilton No. C-130278, 2013-Ohio-5218, ¶ 12.

{¶31} In this case, Tate cannot overcome the presumption that the trial court considered the appropriate statutory factors in imposing sentence. The record reflects that the trial court heard the arguments of counsel, Tate's version of the incident, and the fact that Tate had no prior felony convictions. The trial court specifically stated on the record and in its journal entry that it had considered the required factors of the law and had concluded that Tate's prison sentence was consistent with the purpose of R.C. 2929.11.

{¶32} Moreover, the trial court imposed a sentence that was within the statutory limits. As a result, this court cannot clearly and convincingly find that Tate's sentence is contrary to law. Tate's second assignment of error is also overruled.

{¶33} Tate's convictions and sentences are affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
KENNETH A. ROCCO, PRESIDING JUDGE

PATRICIA ANN BLACKMON, J., and
TIM McCORMACK, J., CONCUR